# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MMG INSURANCE COMPANY, | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| FLOOR ASSOCIATES, INC., | : | No. 15-4814 |
| Defendant. | : | |

## MEMORANDUM

**Schiller, J.**                                                                                                  **August 8, 2017**

      Floor Associates, Inc., doing business as Feasterville Floor, was a subcontractor on The Grande at Riverview Condominium project. The project ran into a number of difficulties, and the condominium association sued the project's contractor. The contractor in turn sued its subcontractors, including Floor Associates. Floor Associates had an insurance policy with MMG Insurance Company ("MMG") and sought coverage under the policy after the contractor joined Floor Associates in the litigation surrounding the condominium project.

      MMG seeks a declaration stating that it owes no duty to defend or indemnify Floor Associates in the condominium project litigation. MMG has moved for summary judgment. The legal issue is one that Pennsylvania state courts, and courts in this District, have tackled before: if the case hinges on Floor Associates's faulty workmanship, the claims do not trigger coverage under the insurance policy. While Floor Associates tries to distinguish these cases, precedent pulls the rug out from under Floor Associates's legal position. Accordingly, the Court grants summary judgment in favor of MMG and concludes that it owes Floor Associates no duty to defend here.

I.   **BACKGROUND**

   A.   **The Underlying Litigation**

The Grande at Riverview Condominium Association is the governing body of a condominium consisting of 387 units as well as common areas such as a swimming pool, gym, outdoor courtyards, concrete walkways, outdoor parking areas, underground parking garages, and lobby areas. (Pl.'s Mot. for Summ. J. Ex. A [Riverview Sixth Am. Compl. [hereinafter, "Riverview Complaint"]] ¶¶ 14–16.) Defendants, D.R. Horton, Inc., and D.R. Horton, Inc. – New Jersey, were jointly responsible for the development, creation, construction, operation, marketing, and management of the condominium. (*Id.* ¶¶ 3–4, 19.) Employees of D.R. Horton, Inc. were on site and supervised and managed the construction of the condominium. (*Id.* ¶ 22.) Minno & Wasko was an architectural firm that assisted with the design and construction of the condominium, including the interpretation and application of prevailing building codes, construction administration services, and the review of change orders. (*Id.* ¶¶ 5, 20.)

The Riverview Complaint, brought against D.R. Horton, Inc. – New Jersey, D.R. Horton, Inc., and Minno & Wasko, alleges a number of "construction deficiencies, defects and nonconformities," as well as "financial deficits and discrepancies associated with the management and operation" of the condo association. (*Id.* ¶¶ 44, 49.) It further alleges that ruptured sprinkler pipes caused significant water damage to a number of units, and a fire in the building also did damage. (*Id.* ¶¶ 60–67.) According to the condo association, the defendants knew, or should have known, about the numerous defects in the building, and the failure to correct these defects caused serious damage to the building, costing a lot of money. (*Id.* ¶¶ 96–100.) Among the serious damage that must be repaired, the plaintiff alleged that "[c]arpeting and flooring materials were installed over

uneven substrates which in turn have created tripping hazards along paths of ingress." (*Id*. ¶ 150.) Moreover, "[t]he installation of carpeting and flooring materials over uneven substrates has also resulted in premature and excessive wearing and deterioration." (*Id*. ¶ 151.) The condo association alleged breach of warranty, breach of contract, violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, negligent construction, negligence, and negligent supervision.

Defendants, D.R. Horton, Inc., D.R. Horton, Inc. – New Jersey, and Minno & Wasko Architects and Planners, PC, in turn filed a joinder complaint against a number of subcontractors, including the defendant here, Floor Associates. The Sixth Amended Joinder Complaint alleges that Floor Associates installed carpeting, vinyl flooring, and wood flooring at the condominium pursuant to written contracts with D.R. Horton, Inc. – New Jersey. (Pl.'s Mot. for Summ. J. Ex. B [Sixth Am. Joinder Compl.] ¶¶ 115–16.) They claimed that "[a]ny alleged deficiencies in the carpeting, vinyl and/or wood flooring are the result of the defective work performed by Additional Defendant, Feasterville Floor." (*Id*. ¶ 117.) D.R. Horton, Inc. – New Jersey, and D.R. Horton sued Floor Associates for breach of contract, breach of express warranty, failure to procure insurance, and indemnification. (*Id*. ¶¶ 171–73, 185–88, 193–207.)

**B.     The Policy**

MMG issued a Special Business Owner's Policy to Floor Associates with coverage dates of June 15, 2004, through June 15, 2015.

The insurance policy provided that MMG would:

> [P]ay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury', 'property damage' or 'personal and advertising injury' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury', 'property damage'

3

or 'personal and advertising injury', to which this insurance does not apply. We may at our discretion, investigate any 'occurrence' and settle any claim or 'suit' that many result.

(Compl. Ex. C [hereinafter "Policy"] at 26.) The Policy covers "property damage" caused by an "occurrence." An "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id*. at 26, 39.) "Property damage" means "[p]hysical injury to tangible property, including all resulting loss of use of that property" or "[l]oss of use of tangible property that is not physically injured." (*Id*. at 39.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate when the admissible evidence fails to demonstrate a genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). When the movant does not bear the burden of persuasion at trial, it may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry its burden of persuasion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

Thereafter, the nonmoving party demonstrates a genuine issue of material fact if it provides evidence sufficient to allow a reasonable finder of fact to find in its favor at trial. *Anderson*, 477 U.S. at 248. In reviewing the record, a court "must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Prowel v. Wise Bus. Forms, Inc.*, 579 F.3d 285, 286 (3d Cir. 2009). The court may not, however, make credibility determinations or weigh the evidence in considering motions for summary judgment. *See Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000); *see also Goodman v. Pa. Tpk. Comm'n*, 293 F.3d 655, 665 (3d

Cir. 2002).

## III. DISCUSSION

### A. Pennsylvania Contract Interpretation

Under Pennsylvania law, interpretation of insurance contracts, including questions of coverage, is a question of law for the court. *401 Fourth St., Inc. v. Investors Ins. Grp.*, 879 A.2d 166, 171 (Pa. 2005). The ultimate aim is to ascertain the intent of the parties as expressed by the language of the contract. *See id*. The policy must be read as a whole and its meaning construed according to its plain language. *Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999); *see also Giancristoforo v. Mission Gas & Oil Prods., Inc.*, 776 F. Supp. 1037, 1041 (E.D. Pa. 1991) ("The policy must be construed as a whole, not in discrete units.").

A court must enforce the clear and unambiguous language of the insurance policy. *Med. Protective Co. v. Watkins*, 198 F.3d 100, 103 (3d Cir. 1999) (citing *Standard Venetian Blind Co. v. Am. Empire Ins. Co.*, 469 A.2d 563, 566 (Pa. 1983)). Moreover, a court should read the policy to avoid ambiguities and give effect to all of its provisions. *Id.*; *see also Little v. MGIC Indem. Corp.*, 836 F.2d 789, 793 (3d Cir. 1987). If, however, the language of the policy is open to multiple interpretations, it is ambiguous and must be construed against the insurer as the drafter of the contract. *Watkins*, 198 F.3d at 103; *see also Madison Constr. Co. v. Harleysville Mut. Ins. Co.*, 735 A.2d 100, 106 (Pa. 1999).

#### 1. *The duty to defend*

At issue here is the insurer's duty to defend, which is broader than the insurer's duty to indemnify. *Frog*, 193 F.3d at 746. The duty to defend is assessed by comparing the complaint to the

policy. *See Gene's Rest., Inc. v. Nationwide Ins. Co.*, 548 A.2d 246, 246–47 (Pa. 1988); *United Servs. Auto Ass'n v. Elitzky*, 517 A.2d 982, 985 (Pa. Super. Ct. 1986); *see also Erie Ins. Exch. v. Costa Constr., LLC*, No. 1516, 2015 WL 7111102, at *2 (Pa. Super. Ct., May 8, 2015) ("The obligation of an insurer to defend an action against the insured is fixed solely by the allegations in the underlying complaint."). The factual allegations in the underlying complaint must be taken as true and liberally construed in favor of the insured. *Frog*, 193 F.3d at 746 (citing *Biborosch v. Transamerica Ins. Co.*, 603 A.2d 1050, 1052 (Pa. Super. Ct. 1992)). The duty to defend arises if "the allegations in the complaint . . . could potentially fall within the coverage of the policy." *Victoria Ins. Co. v. Mincin Insulation Servs., Inc.*, Civ. A. No. 08-909, 2009 WL 2998144, at *2 (W.D. Pa. Sept. 15, 2009); *see also Sphere Drake P.L.C. v. 101 Variety, Inc.*, 35 F. Supp. 2d 421, 427 (E.D. Pa. 1999). This rule applies even when the lawsuit is "groundless, false, or fraudulent." *Britamco Underwriters, Inc. v. Weiner*, 636 A.2d 649, 651 (Pa. Super. Ct. 1994); *see also D'Auria v. Zurich Ins. Co.*, 507 A.2d 857, 859 (Pa. Super. Ct. 1986) ("It is the face of the complaint and not the truth of the facts alleged therein which determines whether there is a duty to defend."). When determining whether a third-party complaint triggers coverage, the court focuses on the complaint's factual allegations, not the terminology used to name the causes of action. *Markel Int'l Ins. Co. v. 2421 Salam, Inc.*, Civ. A. Nos. 08-1052 & 08-2484, 2009 WL 1220557, at *2 (E.D. Pa. Mar. 31, 2009) (citing *Mut. Benefit Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999)).

Ultimately, the court must define the scope of the coverage under the insurance policy and then compare the scope of the coverage to the allegations of the underlying complaint. *State Farm Fire & Cas. Co. v. Moreco*, 171 F. Supp. 3d 373, 377 (E.D. Pa. 2016).

### 2. Scope of coverage

Courts have frequently addressed the meaning of the term "occurrence" in the context of allegations of faulty workmanship. They have regularly concluded that faulty workmanship does not fall within the meaning of the term "occurrence" because it lacks the fortuity necessary to qualify as an accident.

In *Kvaerner Metals Division of Kvaerner U.S., Inc. v. Commercial Union Insurance Co.*, 908 A.2d 888 (Pa. 2006), the Pennsylvania Supreme Court considered the meaning of the word "occurrence," which the policy defined as "an accident, including continuous or repeated exposure to substantially the same or general conditions." 908 A.2d at 897. Kvaerner entered into an agreement with the Bethlehem Steel Corporation to design and construct a coke oven battery. *Id*. at 891. A number of problems were discovered with the coke oven battery, and Bethlehem Steel sued Kvaerner for breach of contract and breach of warranty. *Id*. Kvaerner notified its insurance carrier, which disclaimed coverage because the policy only covered property damage caused by an occurrence. *Id*. at 897. The court concluded that a claim reliant on faulty workmanship was not an occurrence under the insurance policy because there was no accident. *Id*. at 899. An accident required a fortuitous event not covered by faulty workmanship. *Id*. at 898. Therefore, there was no duty to defend against a lawsuit that alleged only property damage from poor workmanship to the work product itself. *Id*. at 900.

The Pennsylvania Superior Court also considered the meaning of "occurrence" under an insurance policy in *Millers Capital Insurance Co. v. Gambone Brothers Development Co.*, 941 A.2d 706 (Pa. Super. Ct. 2007). Gambone, a real estate firm, purchased insurance from Millers for two housing development projects. *Id*. at 708. The insurance covered "bodily injury" and "property"

damage" caused by an "occurrence," defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id*. at 711. Homeowners at the housing developments sued Gambone alleging that faulty workmanship on the part of Gambone and/or its subcontractors damaged their homes. *Id*. at 708. The issue in *Gambone* was whether Millers had a duty to defend Gambone in those lawsuits. *Id*.

The Pennsylvania Superior Court concluded that *Kvaerner* dictated the outcome in *Gambone*. The court rejected Gambone's argument that water damage flowing from faulty workmanship could constitute an "occurrence." *Id*. at 713–14. Such foreseeable damage was not an occurrence because the water leakage merely exacerbated the damage caused by the faulty workmanship and was therefore not "sufficiently fortuitous" be deemed an accident. *Id*.

The Third Circuit distilled *Gambone's* meaning in *Zurich Am. Ins. Co. v. R.M. Shoemaker Co.*, 519 F. App'x 90 (3d Cir. 2013). "*Gambone* specifically rejected the argument that faulty workmanship by a subcontractor may constitute an 'occurrence' or 'accident' from the perspective of the contractor." *Id*. at 93. According to the court, "*Kvaerner* and cases following it make clear that faulty workmanship under a contract is not sufficiently fortuitous to qualify as an 'occurrence.'" *Id*. at 92–93.

The definition of "occurrence" even excludes faulty workmanship claims, brought as negligence claims. *Moreco Constr., Inc.*, 171 F. Supp. 3d at 380; *see also Speciality Surfaces Int'l, Inc. v. Cont'l Cas. Co.*, 609 F.3d 223, 231 (3d Cir. 2010) ("Faulty workmanship, even when cast as a negligence claim, does not constitute [an occurrence].").

This case is similar to *Moreco*. In that case, the Nitzes hired Russell Construction as a general contractor for their home construction project. 171 F. Supp. 3d at 376. Russell in turn hired Mack-

8

Donohoe to install a new roof, and Mack-Donohoe hired Moreco to "actually install" the new roof, and to make certain that the property was protected from water infiltration during construction. *Id*. Unfortunately, rainwater entered the house, which Russell Construction alleged was not properly tarped, wrapped, covered, or otherwise protected. *Id*. Russell Construction paid to fix the damage, then sued Moreco for negligence.

Moreco had an insurance policy with State Farm and sought defense and indemnity for the lawsuit filed by Russell Construction. State Farm sought a declaration that it owed Moreco no duty to defend or to indemnify. The insurance policy at issue in *Moreco* defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id*. at 376. Russell Construction charged that Moreco failed to: (1) properly install and secure a covering; (2) keep out water; (3) warn the plaintiff that the covering was improperly secured; (4) ensure that the house was covered and protected; (5) protect the home; (6) adequately instruct their employees and agents in properly protecting the home; and (7) supervise their employees and agents in performing their tasks. *Id*. at 381.

The court undertook an exhaustive review of Russell Construction's claims against Moreco and determined that those claims failed to allege an occurrence under the policy. It concluded that *Kvaerner*, *Gambone*, and their progeny controlled and, therefore, State Farm owed no duty to defend Moreco. *Id*. at 383. "The essence of Russell Construction's allegations against Moreco is its workmanship and the foreseeable consequences of that workmanship. We find no possibility Moreco's failure to properly tarp can be considered accidental." *Id*.

These cases all conclude that for an occurrence to trigger coverage under the policy, the underlying complaint must allege something besides faulty workmanship against a contractor or

subcontractor. This is true even if the allegations are couched in terms of negligence, breach of contract, or breach of warranty. *See State Farm Fire & Cas. Co. v. Brighton Exteriors, Inc.*, Civ. A. No. 14-3987, 2015 WL 894419, at *5 (E.D. Pa. Mar. 2, 2015). This is also true when foreseeable consequential damages are sought. *See Zurich*, 519 F.App'x at 94.

### B. Allegations in the Underlying Action

MMG argues that the only allegations against Floor Associates are for faulty workmanship and therefore those allegations fail to trigger coverage under the Policy. Floor Associates argues in response that the allegations against Floor Associates remain murky, and therefore, MMG has a duty to defend it in the underlying litigation. (Def.'s Br. in Opp'n to Mot. for Summ. J. [Def.'s Br.] at 2) ("Without any explanation whatsoever of the distinct nature of Horton's claims against Floor Associates, MMG is hard-pressed to argue with any sincerity that the factual allegations of the complaint cannot support a recovery covered by the policy."). Defendant notes that it "still cannot even make a determination of whether the Condo Assoc.'s or Horton's claims pertain to the Floor Associates' workmanship or product, or arise from defects in the underlayment, subfloor or work of those prior or subsequent trades to which the manufactured carpeting supplied by Floor Associates may have been applied." (Def.'s Br. at 4.)

But under Pennsylvania law, "an insurer's duties under an insurance policy are triggered by the language of the complaint against the insured." *Kvaerner*, 908 A.2d at 896. While the allegations leveled against Floor Associates are sparse, those allegations stem exclusively from faulty workmanship. Therefore, the Court concludes that there is no duty to defend here. The allegations against Floor Associates are for defective work, and the Court is bound by what is alleged against the insured.

Because this case is about shoddy workmanship, Floor Associate's reliance on *Indalex, Inc. v. National Union Fire Insurance Co.*, is misplaced. 83 A.3d 418 (Pa. Super. Ct. 2013). The *Indalex* case involved homeowners who sued a window manufacturer alleging that certain windows and doors installed in their homes were negligently designed and manufactured, resulting in water leakage, physical damage, and personal injury. *Id*. at 420. The Pennsylvania Superior Court concluded that the damage in *Indalex* was caused by an "off-the-shelf product that failed and allegedly caused property damage and personal injury." *Id*. at 424. This "active malfunction" differed greatly from the faulty workmanship alleged in the *Kvaerner* line of cases. *Id*. The *Indalex* court also focused on the fact that the damage, unlike that alleged in *Kvaerner*, extended beyond the work product itself. *Id*. at 425.

This case is governed by *Kvaerner*, not *Indalex*. The Joinder Complaint alleges that Floor Associates installed carpeting and flooring pursuant to a written agreement, and that "[a]ny alleged deficiencies" in the carpeting and/or flooring were "the result of the defective work performed" by Floor Associates. (Sixth Am. Joinder Compl. ¶¶ 116–17.) The complaint makes no reference to defective flooring or carpeting, and does not include allegations of property damage or personal injury beyond the work product itself. Because this case is about the work, not the product, *Indalex* does not control.

*Kvaerner*, *Gambone*, and their progeny govern and foreclose a duty to defend here. And without a duty to defend, there is no duty to indemnify. *See Moreco*, 171 F. Supp. 3d at 383; *see also Westfield Ins. Co. v. Bellevue Holding Co.*, 856 F. Supp. 2d 683, 702 (E.D. Pa. 2012) ("Thus, once a court finds that there is no duty to defend, it must necessarily hold that there is no duty to indemnify either.").

## IV. CONCLUSION

The scope of coverage requires an occurrence, which requires a fortuitous event. The cases make clear that faulty subcontractor work is not an occurrence. The allegations against the insured in the underlying litigation clearly allege faulty workmanship. Therefore, insurance coverage is not triggered and there is no duty to defend. The Court grants summary judgment in favor of MMG. An Order consistent with this Memorandum will be docketed separately.